The first case is Aleman v. Mukasey. Yes, Your Honor. May it please the Court. My name is John Pope. I am the attorney for the petitioner Wilmer Aleman. In his petition for review, the petitioner raised three issues. I would like to take them in reverse order, the first issue being that the BIA and the Immigration Court both erred in finding that petitioner's conviction under California Penal Code Section 245A1 is an aggravated felony. On September 22nd of 2003, the petitioner was sentenced in Fresno County, California to five years suspended sentence, five years probation, and 365 days in the county jail. This can be found at the administrative record, pages 618 and 619. On January 24th of 2006, the same court in Fresno County, in a non-protonc order, modified the petitioner's conviction to 364 days in jail and terminated or revoked his probation. This can be found at the administrative record at page 559. But what happened to the five years suspended sentence? It went away, Your Honor. How? By revoking the probation. All that remained was the sentence of 364 days incarceration. Your Honor, the state court under California Penal Code Section 1203.3A is given the power and shall have the authority at any time during the term of probation to revoke, modify, or change its order of suspension of imposition or execution of a sentence. That is exactly what the court did on January 24th of 2006. By virtue of entering an order reducing his sentence to 364 days and revoking his probation, all that was left were the 364 days of incarceration which were already served. So these five years suspended sentence no longer exists. I guess I'm not sure how that works because that's the one thing that trips me up in this analysis.  I'm not sure how that works. Your Honor, when they originally sentenced him to the five years suspended plus the five years probation, those were the terms of their order which then, when they revoked his probation and modified the sentence downward, did away with those two portions. The new order mentions nothing about a five-year suspended sentence and nothing about probation other than probation was revoked. So then by virtue of that order, the immigration judge and the Board of Immigration Appeals, when they reviewed this matter, both erred in holding that he was still subject to the five-year suspended sentence and the probation. And that was the purpose of our appeal. The other two issues in the case, Your Honor, the first issue being whether or not this would be a particularly serious crime or whether or not the immigration judge and the board erred when they denied the Petitioner relief under the Convention Against Torture. Both those issues would appear to be dispositively resolved by Ninth Circuit case law at this time. But we would also submit to the Court that the issue of the aggravated felony being the controlling issue, if this individual is found not to have an aggravated felony, he is no longer even removable from the United States. The ---- If I may, Your Honor, inasmuch as that is principally our argument, I would like to reserve the balance of our time for rebuttal unless the Court has questions. I just have one question, I guess. The government argued that you waived part of your argument below by not raising it to the BIA. How would you respond to that? Yes, Your Honor. We would argue that we did not waive the Petitioner's arguments by virtue of the fact that jurisdiction would be proper under 8 U.S.C. 1252a2d as we have raised a question of law. Whether or not the Respondent stands convicted of an aggravated felony is within the purview of the Court as a question of law. Okay. But at page 23, the government argues that in his brief to this Court, Allman has failed to challenge or even address the Board's finding that his sentence as modified still included 5 years suspended imprisonment. But that is our point, Your Honor. There is ---- We need to address it because it didn't ---- It didn't exist, so we didn't need to address it. The actual order from the court of Fresno County contains no information as to a 5-year suspended sentence. But that's what the government is relying on is that 5 years. Yes, Your Honor. That's entirely. But you're saying because the actual order doesn't mention it, it's gone. That's our position, Your Honor. I guess that's the question. If a suspended sentence is imposed, then it's there, and a later order that doesn't mention it may not affect it. The termination of probation, Your Honor, we believe terminated the 5-year suspended sentence as well as the 5-year probation. They go hand in hand. I see what the government says. All right.  Thank you, Your Honor. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. My name is Ted Hurd, appearing on behalf of the Respondent and Attorney General this morning. What I would like to do is follow the same order as Petitioner's counsel and go to the aggravated felony issue first, because I think that is certainly, in our mind, a very dispositive issue. I want to turn briefly to the waiver issue, which has been raised by the Court. There were two reasons, I believe, why we made that a prominent point in our opening brief, in our Respondent's brief. First of all, if you read Petitioner's brief, unlike Mr. Pope's argument today, you really don't get any sense that the argument presented to the Court today is similar to the arguments that were either put in the opening brief or to the board or to the immigration judge. The thrust of the arguments before the agency were really the pivot, if you will, was really the reduction, the, quote, Dunk Pro Tuck reduction of 365 days to 364 days with, in my mind, reading the record, no attribution to any significance as to the 5-year suspended or the 5-year probation. In fact, if you look at the Petitioner's brief to the board, there is an opening line, if I can find it, Your Honor, that basically says, and I'm looking at the brief that Petitioner filed before the Board of Immigration Appeals in July 2006, the heading for statement of issues, and this is the record AR-7, statement of issues that the I.J. Ehr in holding that the Respondent's conviction was an aggravated felony due to the 5-year suspended sentence, comma, despite only actually being sentenced to 364 days in jail. Now, I don't want to take too much out of a statement of issue, but I was reading as I've been reading the brief and the opening brief of Petitioner, I didn't see any significance attributed in terms of the January Dunk Pro Tuck order to doing anything vis-à-vis those other two features of the original sentence. The focus, the thrust of Petitioner's argument below was exclusively the aspect of the Dunk Pro Tuck order that said 365 is now 364. My argument also, Your Honor, is if you look at the two four corners of those what I'll call sentencing documents, the change that is made by the Fresno judge in 2006 is adjusting Dunk Pro Tuck back to September 2003, that 365 to 364. But as I read the order, Your Honor, there is nothing done, no changes are articulated or stated to those original 5-year provisions, the two 5-year provisions, 5-year probation, 5-year sentencing. It seems to me that they're not in there at all, and if you look at it, they're gone. Well, Your Honor, what I would argue textually is that if I were the court, the Fresno court in 2006, and I'd been given a motion, and the motion's not in the record, of course, but if I were given a motion by the Defendant's Counsel to adjust a portion of the sentence, the order would adjust that parallel provision. Now, how do you know that? I mean, do you, can you cite, I mean, either side, can you cite me to any California law that explains what the significance of this is, not what you would do if you were a superior court judge? Well, I can't put myself in the mind of a superior court judge, but I guess I would say one. I want to know, is there any law on this, any law on this subject that explains what the significance of a subsequent Dunk Pro Tuck order? I have not seen any in terms of California decisions. The only parallel I would draw is that certainly, if we are trying to make an argument to a statute, wouldn't there be a statute or? Well, what I would say, Your Honor, and maybe this is responsive, is certainly the California Penal Code talks about felonies versus misdemeanors. But as I looked at the California Penal Code, a judge has to make a statement that something is a misdemeanor. In other words, one has to put one of a conviction into one of two boxes. And, of course, our argument is, yes. But if you put it in 364 days, that's not a year, and therefore it's a misdemeanor, right? Well, Your Honor, under State law, if we're looking at State law for the moment, I will assume that that might have been the intention. I will assume that for today's argument. Now, whether the Federal law is going to be bound by that, I don't know, absent a statement by the judge that, in fact, it is a misdemeanor. I think there's a case from this circuit called Garcia-Lopez that suggests that if a label is attached, if that label is attached, then that will be binding on the agency. But I would submit that that's not what went on in this situation based on the four corners of these documents. And I think that what I'll come back to, Your Honor, is really the issue that is fundamental really to the disposition of this appeal, which is really looking at the INA provisions at 10148B that basically is very clear that suspensions, later suspensions, do not affect the original term of imprisonment. That's the term of art that's used throughout the chapter, and I think that it's very clear, and there's one decision which both opposing counsel and I have noted, which is not in our briefs, but it's worth just mentioning to the Court, which actually Judge Wardlaw decided, United States v. Echevarria-Escobar, which is a 270 F. 3rd 1265, and that basically was a sentencing case, and it involved an alien who came back after having been deported, and it was a criminal conviction. But basically, the Court looked at the meaning of 43B and the fact that suspensions including probation do not affect the aggravated felony definition. So I think that, again, the foundation point for our opening brief, looking at Petitioner's argument, which did not seem to challenge the aggravated felony point at all, and certainly not the argument that I think Mr. Pope is making today, was that for purposes of reconciling the provisions of the INA, the aggravated felony provision, term of one year, one year more, I guess, and also looking at what are the later effects of, for instance, the superior court order. Does the superior court order have any effect? Kennedy Is it your position that the Federal law would provide that even if the suspended sentence had explicitly been revoked, it still wouldn't help him? Are you saying that once the original sentence is made, that the ballgame is over? Or are you just saying that as long as the suspended sentence is there, it counts? Well, I think I would – I think that the argument, which is the facts of this case, is that these two five-year provisions remained in place undisturbed. Your Honor's first question is the more difficult one, because as you may know, the case of a reduction or change in sentence is actually to gain advantage in the immigration field. It does not go along with that. That's the Murillo case. In contrast, this Court has said, I think, in Garcia-Lopez, that if, in fact, the – if you look at the State law as implemented by the State judge, and that judge basically says this is not a felony, this is a misdemeanor, this Court has said that the agency is bound by that. But what we don't have in context here is what was the purpose of this. And I'm not going back to Judge Wuerloth's question. I'm not trying to argue extraneous issues here. I'm just saying that looking at the four corners of these two documents, all that – all that happened here, non pro tonque, after all, was this one adjustment. And I think that had there been other changes proposed, those would be evidenced in the document. The document has to have vitality going forward. Is that a question of law or fact? Well, I think that construing – I would probably say under this Court's precedent that construing an interpretation of law, meaning the California law, would be an issue of law as opposed to an issue of fact. Now, again, I would come back to what I'll call an exhaustion issue. I don't think this was fairly even presented to the Board or to the Court, Immigration Court, in terms of this nuance that Mr. Polk is raising today. And that's one reason why, coming back to my waiver argument, we took as a bedrock that the challenge was the 365 to 364, and even more pointedly, if you look at opening – the opening brief, the issue of particularly serious crime, which I'm not going to take time, since I have 35 seconds. Well, doesn't that just piggyback on the aggravated felony? Excuse me, Your Honor. I missed that. Doesn't the particularly serious crime just piggyback on the aggravated felony? It doesn't. It does, I would say, most of the way, although there is the textual argument that I think the Delgado case resolves, which is that this is a five-year tier. But you're right. The definitional issue is the same. And I would argue we've got to reconcile these provisions to make sure that we don't have inconsistencies using subsection B, that some things are suspended for some reasons and some for the others. Your Honor, I'm going to submit on the Convention for Torture issue, I think, that under the substantial evidence test, the agency's decision clearly should be sustained. I have one little question on that one, and that is how many times did the Petitioner visit El Salvador after he became affiliated with these gangs? My recollection from the record is he visited once during the 1999 period, and it's not clear how long, but certainly there was no allegation that he was targeted, injured, or threatened by gang – by El Salvador and MS-3, MS-13 gang members. So it's one visit in 1999. One visit. Okay. That's my recollection. Thank you. I will be brief, Your Honor. Thank you. We – the counsel for the government speaks of the four corners of the document. I would agree the document speaks for itself. That's why we went no further. At every stage, we have submitted the documents to the court, to the board, and to this panel, and have said at all times that because of the modification, the original sentence no longer exists. It's in our brief at page 28, where we say in the final paragraph that the Petitioner's conviction does not fit the one-year requirement, and the State of California has seen fit to modify the Petitioner's sentence. Did it from the beginning. Did it non-pro-tunc. Therefore, the previous sentence is nullified by virtue of a new sentencing document. And the new sentencing document is now the law in his case. So we submit to the court that he is – the Petitioner no longer stands convicted of an aggravated felony. The court also asked a question about – I believe it was in the nature of full faith and credit, as there are several cases, starting with a board case called Cota Vargas. And Cota Vargas is – the Cota Vargas case is at 23 INN 849. It's BIA 2005, and also Garcia-Lopez v. Ashcroft, as was alluded to by counsel for the government, both stand for the proposition that State judgments are given full faith and credit in the Federal courts. Thank you, Your Honor. I have one question. On the non-pro-tunc order, ER 547, there's some writing underneath the section that says fees PC 1202.4. Would it assist the court to look at the original? It is easier to read than any of the copies. All right. I'm going to hand it to the clerk, please, and I'll take a look at it. Thank you. I can't read that. It's just – there's this word on the page, and it's blank compared to the other. All right. Thank you, counsel. Thank you, Your Honor. And if you have no further questions, that concludes my presentation. Thank you. The case of Elliman v. McKaysey will be submitted.
judges: Canby, Wardlaw, Mills